E. Robert Spear (8672)
REMMEL & SPEAR, LLP
7456 West Sahara Suite 101
Las Vegas, Nevada 89117
Telephone: (702) 750-0571
Facsimile: (702) 750-0572
email: rspear@remmelspear.com

*Attorneys for debtor*

E-filed on January 19, 2010

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-09-21423-LBR |
| BETTY HEROLD | Chapter 11 |
| | **DEBTOR'S PLAN OF REORGANIZATION** |
| | Date: N/A |
| | Time: N/A |

Debtor Betty Herold, debtor and debtor-in-possession, by and through her undersigned counsel, proposes this debtor's plan of reorganization pursuant to section 1121(c) of the Bankruptcy Code for the resolution of debtor's outstanding creditor claims and interests. Reference is made to the Disclosure Statement (as that term is defined herein) distributed contemporaneously herewith, for a discussion of the debtor's history, business, results of operations, projections for future operations, risk factors, a summary and analysis of the plan, and other related matters. The debtor is the proponent of this plan within the meaning of section 1129 of the Bankruptcy Code.  All holders of claims are encouraged to read this plan and the disclosure statement in their entirety before voting to accept or reject this plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and

Fed.R. Bankr. P. 3019 and Article XII of this plan, the debtor reserves the right to alter, amend, modify, revoke or withdraw this plan prior to its substantial consummation.

### ARTICLE I

### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

*1.1 Scope Of Definitions; Rules of Construction.*

For the purpose of the Plan and the accompanying Disclosure Statement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*1.2 Definitions.*

1.21 "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after commencement of the Chapter 11 Case, (b) Professional Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

1.22 "Administrative Claim Bar Date" means the end of the first Business Day

2

occurring on or after the sixtieth (60th) day after the Effective Date.

1.23 "Administrative Convenience Claim" means an Allowed Unsecured Claim of $2,000 or less.

1.24 "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date (i) no proof of Claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the time periods fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim may refer to a Secured Claim, General Unsecured Claim, or Priority Claim as the context provides.

1.25 "Allowed Equity Interest" means an Equity Interest or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date (i) no proof of Claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the time periods fixed by the Plan, the Bankruptcy Code or

by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan.

1.26 "Allowed Priority Claim" means a Priority Claim that is an Allowed Claim.

1.27 "Allowed Secured Claim" means a Secured Claim that is an Allowed Claim.

1.28 "Allowed Unsecured Claim" means an Unsecured Claim or General Unsecured Claim that is an Allowed Claim.

1.29 "Annual Basis" means the time period commencing on April 1 through March 31 of each year.

1.30 "Available Cash" means as of any date of determination all Net Distributable Cash.

1.31 "Avoidance Action(s)" means a cause of action brought pursuant to sections 542, 543, 544, 545, 547, 548 or 549 of the Bankruptcy Code.

1.32 "Ballot" means the Ballot for accepting or rejecting this Plan in a form approved by the Bankruptcy Court.

1.33 "Ballot Date" means the last date determined by the Bankruptcy Court for the casting of Ballots.

1.34 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.35 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada or such other court as may have jurisdiction over the Chapter 11 Case.

1.36 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of

4

the Bankruptcy

Court, as applicable in the Chapter 11 Case or proceedings therein, as the case may be.

1.37 "Bar Date" is December 2, 2009 and the date for which any claims filed thereafter will be void and disallowed for purposes of voting and distribution.

1.38 "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Fed. R. Bankr. P. 9006(a)), on which commercial banks are open for business in Las Vegas, Nevada.

1.39 "Cash" means currency, checks, negotiable instruments and wire transfers of immediately available funds.

1.40 "Chapter 11 Case" means the Chapter 11 case of the Debtor, including all adversary proceedings pending in connection therewith.

1.41 "Claim" means a claim against the Debtor, whether or not asserted as defined in section 101(5) of the Bankruptcy Code.

1.42 "Claims Objection Deadline" means the last day for filing objections to Disputed Claims, which shall be 90 days after the Effective Date.

1.43 "Class" means one of the classes of Claims or Interests herein described.

1.44 "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.45 "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.46 "Confirmation Hearing" means the hearing to consider the confirmation of the Plan under section 1128 of the Bankruptcy Code.

1.47 "Confirmation Order" means the order entered by the Bankruptcy Court confirming

5

the Plan.

1.48 "Creditor" means any Person or an entity holding a Claim against the Debtor.

1.49 "Cure" means the distribution of cash, or other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.50 "Debtor" means Betty Herold.

1.51 "Disallowed Claim" is a Claim that is not an Allowed Claim.

1.52 "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

1.53 "Disputed Claim" shall mean a Claim which has not been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, and if no proof of Claim has been, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed in the Schedules as disputed, unliquidated, or contingent, and which has not been resolved by written agreement by the parties or an order of the Bankruptcy Court; if a proof of Claim has been filed or deemed to have been filed, by the applicable Bar Date, (I) a Claim for which a corresponding Claim has been listed in the Schedules as disputed, unliquidated, or contingent; (ii) a Claim for which a corresponding Claim has been listed in the Schedules as other than disputed, unliquidated, or contingent, but the amount of such Claim as asserted in a timely filed proof of

Claim varies in an amount greater than or in a Class different than that listed by the Debtor in the Schedules; (iii) as to which the Debtor or any party in interest entitled to file and prosecute such objection in the Chapter 11 Case, has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order; (iv) for which a Proof of Claim was required to be filed by order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly filed; or (v)that is disputed in accordance with the provisions of this Plan.

      1.54 "Disputed Claim Reserve" means a reserve established to hold in one or more accounts Cash equal to the aggregate amount thereof that would have been distributed on a Distribution Date on account of a Disputed Claim.

      1.55 "Distribution(s)" means any distribution by the Debtor or Reorganized Debtor of monies to the holders of Allowed Claims.

      1.56 "Distribution Date(s)" means the days that the Debtor will make Distributions, on April 1, July 1, October 1, and January 1.

      1.57 "Effective Date" means the last to occur of: 1) the first Business Day that is at least eleven (11) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect and (ii) the Business Day on which all conditions to the consummation of the Plan set forth in Section 9.2 of this Plan have been satisfied or waived as provided in Section 9.3 of this Plan and is the effective date of the Plan.

      1.58 "Equity Interest" means an Interest of the Debtor in the Debtor's property.

      1.59 "Estate" means the estate created for the Debtor in the Chapter 11 case pursuant to

section 541 of the Bankruptcy Code.

1.60 "Exempt Asset(s)" means any asset deemed to be exempt under applicable law, 11 U.S.C. section 522 and/or Nevada Revised Statute 21.090.

1.61 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which, not having been reversed, modified, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal from or to seek review or rehearing of has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.62 "General Unsecured Claim" means an Unsecured Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

1.63 "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.64 "Initial Distribution Date" means the first Business Day after the Effective Date.

1.65 "Insider" means any individual or entity meeting the description set forth in section 101(31) of the Bankruptcy Code.

1.66 "Interest(s)" means an interest of the Debtor or interest in the property of Debtor.

1.67 "IRA Net Proceeds" means proceeds from an Individual Retirement Account ("IRA") owned by Debtor, if any, less any taxes that are due upon removal of such funds from the Debtor's IRA.

1.68 "Litigation Claims" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their Estate may

hold against any Person, which are to be retained by the Reorganized Debtor.

1.69 "Net Distributable Cash" means as of any date of determination, the Debtor' Projected Disposable Income in the Debtor' possession and the net proceeds from any recovery on the Litigation Claims and Avoidance Actions.

1.70 "Non-Exempt Asset(s)" means any asset not deemed to be exempt under applicable law, 11 U.S.C. section 522 and/or Nevada Revised Statute 21.090.

1.71 "Other Definitions" means a term used in this Plan that is not defined in this Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed thereto in the Bankruptcy Code or Bankruptcy Rules.

1.72 "Person" means person as defined in section 101(41) of the Bankruptcy Code.

1.73 "Petition Date" means the date the Debtor filed her petition for relief commencing the Chapter 11 Case or August 23, 2007.

1.74 "Plan" means this Chapter 11 reorganization plan and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

1.75 "Plan Exhibit" means any exhibit attached hereto.

1.76 "Priority Tax Claim" means a Claim entitled to priority in Bankruptcy Code §§ 507(a)(2)-(8).

1.77 "Projected Disposable Income" means the Debtor's projected disposable income less her living expenses.

1.78 "Pro Rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims) in such Class, unless the Plan provides otherwise.

1.79 "Professional" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.80 "Professional Fee Claim" means a Claim of a professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

1.81 "Reorganization Case" means the Debtor's case under Chapter 11 of the Bankruptcy Code which is currently pending before the Bankruptcy Court as Case No. BK-S-09-23767-LBR.

1.82 "Reorganized Debtor" means the Debtor after the Effective Date, who will own all of her assets, Exempt Assets or Non-Exempt Assets.  This term also includes those entities, which the Debtor may create and in which she will own 100% of the interests and to which she may donate property of the estate.

1.83 "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed in the Bankruptcy Court by the Debtor as such schedules or statements as may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009.

1.84 "Secured Claim" means the Claim of any Creditor of the Debtor who holds a lien, security interest, or other encumbrance in property of the Debtor's estate as security for repayment thereof, and which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent such Claim has been allowed by the Court pursuant to section 502 of the Bankruptcy Code and to the extent of the value of the security determined in accordance with section 506 of the Bankruptcy Code.

1.85 "Substantial Consummation" is the date upon which there is a Final Order.

1.88 "Trustee" means the United States Trustee.

1.89 "Unimpaired" means when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.90 "Unsecured Claim" means any Claim that is not a Secured Claim, a Priority Claim, or an Administrative Claim, or an unclassified Claim of the kind described by Section 507(a)(8) of the Bankruptcy Code. Unsecured Claim shall not include the Allowed Equity Interest.

*1.3 Rules of Interpretation.*

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan, (e) captions and heading to Articles and sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

*1.4 Computation of Time.*

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

*1.5 Governing Law.*

11

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Nevada shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

*2.1 Introduction.* All Claims and Interest, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Administrative Claims and Priority Tax Claims have not been classified. The respective treatment of unclassified claims is set forth in Section 3.1 of this Plan.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

For ease of review, the following chart summarizes the Classes of Claims under this Plan:

| | |
|---|---|
| Class 1: Secured portions of claims of Bank of America related real property located at 5064 Ivy Creek, Las Vegas, Nevada. | Impaired-solicitation required. |

| Class 2: Secured portion of claims of secured lenders for which property was turned over to lender. | Unimpaired-no solicitation required. |
|---|---|
| Class 3: Secured portions of claims secured by property Debtor will retain. | Impaired-solicitation required. |
| Class 4: Claims of HOAs secured by liens on property to be retained by Debtor, including any past due post-petition amounts. | unimpaired-no solicitation required. |
| Class 5: Claims of general unsecured creditors. | Impaired-solicitation required. |
| Class 6: Claims secured by property to be sold. | Unimpaired-no solicitation required. |

*2.2 Specific Classification of Claims and Interests.*

    2.21 Class 1: Claims of Bank of America related to 5064 Ivy Creek Secured.  Altered per agreement and adequate protection order dated December 18, 2009 (#85).

    2.22 Class 2: Secured portion of claims of secured lenders for which property was turned over to lender.  This class includes the following creditor(s):

        • Secured portion of claim of WMC Mortgage Corporation c/o BAC Home Loans Servicing, LP secured by real property located at 1550 Oakhill Road, Gulf Breeze, FL.

    2.23 Class 3: Claims of general unsecured creditors.  These claims include claims for credit cards and unsecured portions of claims partially secured by real property.  Creditors falling into this class include:

1    • Claim of Wells Fargo Bank, N.A., c/o Wells Fargo Card Services Recovery

2    Department PO Box 9210 Des Moines, IA 50306.

3    • Claim of Coast 2 Coast Financial 101 Hodencamp Road Ste 120 Thousand

4

5    Oaks, CA 91360.

6    • Claim of The Home Depot/Cbsd PO Box 6497 Sioux Falls, SD 57117.

7    • Claim of JP Morgan Chase Bank, Na, formerly Washington Mutual Fa,

8    William J. Malcolm, Esq., Malcolm Cisneros, 2112 Business Center Drive, Second Floor

9

10   Irvine, CA 92612.

11   • Claim of Chase Home Equity 8333 Ridgepoint Drive, Floor 01 Irving, TX

12   75063-5812.

13   • Claim of Central Mortgage Company 801 John Barrow Road Suite 1 Little

14   Rock, AR 72205.

15

16   • Claim of BAC Home Loans Servicing, LP over and above agreed upon amount

17   in class 1 above.

18   • Claim of WMC Mortgage Corporation c/o BAC Home Loans Servicing, LP

19   related to 1550 Oakhill Road, Gulf Breeze, FL.

20

21   • Claim of OneWest Bank 6900 Beatrice Drive Kalamazoo, MI unsecured

22   portion related to 8380 Carmel Ridge Court, Las Vegas, Nevada 89113.

23   • Claim of EMC Mortgage Corporation Pite Duncan, LLLP Attn: Eddie R.

24   Jimenez, Esq. 4375 Jutland Drive, Suite 200 PO Box 17933 San Diego, CA 92177-0933.

25   • Claim of Wells Fargo Bank, N.A. Bankruptcy Department One Home Campus

26   Attn: Bkcy payment processing MAC# x2302-04C Des Moines, IA 50328.

27

28   • Claim of WMC Mortgage Corporation c/o BAC Home Loans Servicing, LP

14

secured by 1550 Oakhill Road, Gulf Breeze, FL.

• Claim of Up/Regionsm 215 Forrest St Hattiesburg, MS 39401 related to Emerald Dolphin.

2.24 Claims of HOAs secured by liens

• Claim of The Carmels at Spanish Trail HOA c/o Nevada Association Services, Inc. 6224 West Desert Inn Road Las Vegas, Nevada 89146.

• Claim of Spanish Trail Master c/o Nevada Association Services, Inc. 6224 West Desert Inn Road Las Vegas, Nevada 89146.

• Claim of Star Hill HOA c/o Nevada Association Services, Inc. 6224 West Desert Inn Road Las Vegas, Nevada 89146.

2.25 Class 5: Secured portions of claims of secured by property debtor is keeping.

• Claim of OneWest Bank 6900 Beatrice Drive Kalamazoo, MI related to 8380 Carmel Ridge Court, Las Vegas, Nevada 89113.

• Claim of JP Morgan Chase Bank, 7255 Bay Meadows Way Jacksonville, FL 32256.

• Claim of Wells Fargo Bank, N.A. Bankruptcy Department One Home Campus Attn: Bkcy payment processing MAC# x2302-04C Des Moines, IA 50328.

• Claim of EMC Mortgage Corporation Pite Duncan, LLLP Attn: Eddie R. Jimenez, Esq. 4375 Jutland Drive, Suite 200 PO Box 17933 San Diego, CA 92177-0933.

• Claim of Central Mortgage Company 801 John Barrow Road Suite 1 Little Rock, AR 72205.

2.26 Class 6: Claims secured by real property to be sold pursuant to 11 USC § 363.

• Chevy Chase Bank, FSB Pite Duncan, LLLP Attn: Eddie R. Jimenez, Esq.

15

4375 Jutland Drive, Suite 200 PO Box 17933 San Diego, CA 92177-0933

## ARTICLE III

### TREATMENT OF CLAIMS AND INTERESTS

*3.1 Unclassified Claims.*

3.11 Administrative Claims. Except as otherwise provided for herein, and subject to the requirements of this Plan, inclusive, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Administrative Claim, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim: (x) cash equal to the unpaid portion of such Allowed Administrative Claim or (y) such treatment as to which the Debtor and such holder have agreed in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in accordance with the terms and conditions of any agreements relating thereto.

3.12 Priority Tax Claims. Each holder of an Allowed Priority Tax Claim, if any, shall be entitled to receive, on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim will be paid on the later of (i) the Initial Distribution Date, (ii) the tenth (10th) Business Day after the date on which an order allowing such Claim becomes a Final Order, or (iii) such other time as is agreed to by the holder of such Claim and Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date.

16

*3.2 Classes Of Claims and Interests That Are Not Impaired.*

    3.21    Class 2: Secured portion of claims of secured lenders for which property was turned over to lender.

    3.22    Class 4: Claims of HOAs secured by liens on property to be retained by debtor, including any past due post-petition amounts.

    3.23    Class 6: Claims secured by property to be sold.

*3.3 Classes of Claims That Are Impaired.*

    3.31 Class 1: Secured portions of claims of Bank of America related real property located at 5064 Ivy Creek, Las Vegas, Nevada.

    3.32 Class 3: Secured portions of claims secured by property debtor is keeping.

    3.33 Class 5: Claims of General Unsecured Creditors – Impaired.  Class 3 consists of holders of General Unsecured Claims. This class includes the amount of all general unsecured claims as set forth in proofs of claims that have been filed and unsecured portions of claims of secured lenders.

    3.34 Reservation of Rights Regarding Claims. Except as otherwise explicitly provided in the Plan, nothing shall affect the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Claims.

<u>**ARTICLE IV**</u>

**ACCEPTANCE OR REJECTION OF THE PLAN**

*4.1 Impaired Classes of Claims and Interests Entitled to Vote.* Claim holders in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan. However, Classes 2, 4, and 6 are to be paid in full and therefore unimpaired under the Plan and are, therefore, presumed to accept the Plan. Their votes will not be solicited.

17

*4.2 Acceptance by an Impaired Class.* In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

*4.3 Summary of Classes Voting on the Plan.* The votes of holders of Claims in Classes 1, 3, and 5 will be solicited with respect to this Plan.

*4.4 Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.* To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or Schedule, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

*5.1 Payments To Classes.* Payments to Allowed Claim holders as set forth herein and in the Plan will be made with the proceeds of real property to be sold, 809 Jeffrey Court Incline Village, Nevada and from Debtor's disposable income.

*5.2 Closing Date and Post-Closing Date Transactions.* The Reorganized Debtor shall commence making payments to Allowed General Unsecured Claims as set forth herein.

*5.2 Source of Funds.* All funds necessary to pay creditors pursuant to the Plan shall come from Available Cash.

/ / /

*5.3 Preservation of Rights of Action.* The Reorganized Debtor shall obtain the rights to all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any person or entity. The Debtor shall also retain all Avoidance Actions. The Reorganized Debtor may pursue such retained litigation claims in the Bankruptcy Court. Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor may, in her sole discretion, enforce, sue on, settle or compromise (or decline to do any of the foregoing) all Litigation Claims and Avoidance Actions.

*5.4 Effectuating Documents; Further Transactions.* The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

*5.5 Exemption From Certain Transfer Taxes.* Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or any other Person or entity pursuant to the Plan in the United States shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND LEASE

*6.0 Executory Contracts And Leases.* The Debtor does not believe that they are party to any unexpired leases or executory contracts.

## ARTICLE VII

### PROVISIONS GOVERNING DISTRIBUTIONS

*7.1 Distributions and Disputed Claims.* In order to facilitate Distributions to holders of Allowed Claims, and to the extent there are Disputed Claims in any Class, the Reorganized Debtor shall set aside in a designated reserve account the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims. In the event that the Reorganized Debtor wish to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the holder of the Disputed Claim, on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive from the Reorganized Debtor that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date. Such payment or distribution shall be made as soon as practical after the order allowing the Claim has become a Final Order.

*7.2 Means of Payment.* Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

*7.3 Delivery of Distributions.* Distributions to holders of Allowed Claims shall be made by the Debtor (a) at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notice of address changes delivered to the Debtor after the date of any related proof of Claim, (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Debtor have not received a written notice of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distributions shall be made to the holder without interest from the date that the distribution was returned as undeliverable. Amounts in respect of undeliverable distributions made by the Debtor shall be returned to the Debtor until such distributions are claimed.

All claims for undeliverable distributions made by the Debtor must be made on or before the second (2nd) anniversary of the Effective Date, after which all unclaimed property shall revert to the Reorganized Debtor free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtor or Reorganized Debtor, or any representative or agent of these parties, to attempt to locate any holder of an Allowed Claim or Interest.

*7.4 Withholding And Reporting Requirements.* In connection with this Plan, and all distributions hereunder, the Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding

21

and reporting requirements. The Debtor shall be authorized to take any and all actions that may

be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Plan: (a) each holder of an Allowed Claim that is to

receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the

satisfaction and payment of any tax obligations imposed by any governmental unit, including

income, withholding and other tax obligations, on account of such distribution, and (b) no

distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until

such holder has made arrangements satisfactory to the Debtor for the payment and satisfaction

of such tax obligations. As long as this case remains open in the Bankruptcy Court the Debtor

shall mail and file a report of all distributions to every holder of an Allowed Claim every six (6)

months until paid in full. Once a class of creditors has been paid in full, the Debtor shall not be

further required to mail and file such reports to that class of creditors.

*7.5 Setoffs.* The Reorganized Debtor may, but shall not be required to, set off against

any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of

such Claim, claims of any nature whatsoever that the Debtor or Reorganized Debtor may have

against the holder of such Claim; provided, however, that neither the failure to do so nor the

allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized

Debtor of any such claim that the Debtor or Reorganized Debtor may have against such holder.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS

*8.1 Prosecution Of Objections.* After the Confirmation Date, only counsel to the Reorganized

Debtor shall have the authority to file objections, settle, compromise, withdraw or litigate to

22

judgment objections to Claims. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

*8.2 Prosecution Of Objections.* After the Confirmation Date, only counsel to the Reorganized Debtor shall have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

*8.3 No Distributions Pending Allowance.* Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## ARTICLE IX

### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

*9.1 Conditions To Confirmation.* The following are conditions precedent to the occurrence of the Confirmation Date: the entry of an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

*9.2 Conditions To Effective Date.* The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 9.3 of this Plan:

      9.21 The Confirmation Order shall have been entered and become a Final Order in form and substance reasonably satisfactory to the Debtor.

      9.22 The Plan has been confirmed pursuant to the Confirmation Order and the

Confirmation Order remains in full force and effect without material modification thereof.

9.23 All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

9.3 Waiver Of Conditions. Each of the conditions set forth in Section 9.2 of this Plan, may be waived in whole or in part by the Debtor without any other notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor or Reorganized Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor or the Reorganized Debtor). The failure of a Debtor or Reorganized Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1 Under sections 105(a) and 1l42 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of; and related to, the Chapter 1l Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

10.11 Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

10.12 Hear and determine all applications for compensation and reimbursement of

24

expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

10.13 Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor are party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

10.14 Effectuate performance of and payments under the provisions of the Plan;

10.15 Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

10.16 Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

10.17 Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

10.18 Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.19 Issue injunctions, enter and implement other orders, or take such other actions as

may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.20 Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

10.21 Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

10.22 Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

10.23 Except as otherwise limited herein, recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

10.24 Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

10.25 Hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

10.26 Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

10.27 Hear and determine any matters relating to modification of the amount and length of Plan payments; and

10.28 Enter a final decree closing the Chapter 11 Case.

/ / /

26

# ARTICLE XI

## TITLE TO PROPERTY; DISCHARGE; INJUNCTION

*11.1 Revesting of Assets.* Subject to the provisions of this Plan, the property of the Estate shall vest in the Reorganized Debtor, subject to the limitations set forth herein, on the Effective Date. As of the Effective Date, all such property of the Debtor shall be free and clear of all liens except as otherwise provided herein.  From and after the Effective Date, Reorganized Debtor may use, acquire and dispose of its property free of any restriction of the Bankruptcy Code, including the employment of and payment to professionals, except as set forth herein.

*11.2 Discharge.* As set forth under 11 U.S.C. § 1141(d)(5), confirmation of the plan and completion of all payments under the Plan, or as so ordered by the Court if the Debtor have not completed payments, may serve as a discharge and release of all Claims or other debt that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(I) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code; or © the holder of a Claim based on such debt has accepted this Plan, including any interest accrued on Claims from the Petition Date.

*11.3 Injunction.* Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is affected pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or rights: (I) commencing or continuing in any manner any action or other proceeding against the Debtor and

27

Reorganized Debtor or her respective property; (ii) enforcing, attaching, collecting or

recovering in any manner any judgment, award, decree, or order against the Debtor or

Reorganized Debtor or her respective property; (iii) creating, perfecting, or enforcing any lien

or encumbrance against the Debtor or Reorganized Debtor or her respective property; (iv)

asserting a set off, right of subrogation or recoupment of any kind against any debt, liability, or

obligation due to the Debtor or Reorganized Debtor or her respective property; and (v)

commencing or continuing any action, in any manner or any place, that does not comply with or

is inconsistent with the provisions of this Plan or the Bankruptcy Code.

*11.4 Exculpation.* Neither Debtor nor Reorganized Debtor nor any of her employees, advisors,

attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest,

or any other party in interest, or any of her respective agents, employees, representatives,

financial advisors, attorneys, or any of her successors or assigns, for any act or omission in

connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation

of this Plan, the consummation of this Plan, except for their willful misconduct, and in all

respects shall be entitled to reasonably rely upon advice of counsel with respect to her duties

and responsibilities under this Plan or in the context of the Chapter 11 Case. No holder of a

Claim or Equity Interest, or any other party in interest, including her respective agents,

employees, representatives, financial advisors or attorneys, shall have any right of action against

Debtor, Reorganized Debtor, or any of her respective present or former members, officers,

directors, employees, advisors, attorneys, or agents, for any act or omission in connection with,

relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the

consummation of this Plan or the administration of this Plan, except for their willful

misconduct.

28

## ARTICLE XII

### MODIFICATION, AMENDMENT, AND WITHDRAWAL OF PLAN

*12.1 Modification and Amendment.* Prior to Confirmation, any of the proponents may alter, amend, or modify this Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, the proponent may, under Section 1127(b), ©, and (d) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under this Plan.

*12.2 Withdrawal of Plan.* Prior to Confirmation, the proponent may withdraw this Plan.

*12.3 Revocation or Withdrawal of this Plan.* If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver of any Claims against the Debtor or any other person, nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall not be admitted into evidence in any proceeding.

*12.4 Severability Of Plan Provisions.* If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to

29

make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE XIII

### MISCELLANEOUS

*13.1 Professional Fee Claims.* All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b) or ll03 of the Bankruptcy Code for services rendered to the Debtor prior to the Effective Date and substantial contribution Claims under section 503(b)(4) of the Bankruptcy Code must be filed and served on the Reorganized Debtor and its counsel no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and its counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

*13.2 Administrative Claims Bar Date.* All requests for payment of an Administrative Claim must be filed and set for hearing with the Bankruptcy Court and served on counsel for the

Debtor, counsel for Debtor, and office of the United States Trustee no later than the close of

business (Pacific Time) no later than 60 days after the Effective Date. Unless a party in interest

objects to an Administrative Claim within thirty (30) Business Days after receipt, such

Administrative Claim may be deemed allowed in the amount requested and shall receive

payment as set forth in section 3.11 herein. In the event that a party in interests objects to an

Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such

Administrative Claim.

*13.3 Compromises and Settlements.* Pursuant to Fed. R. Bankr. P. 9019(a), the Debtor may

compromise and settle various Claims against them and or claims that they may have against

other persons. On the Effective Date, such right shall pass to the Reorganized Debtor pursuant

to Section 11.1 of this Plan.

*13.4 Payment Of Statutory Fees.* All fees payable pursuant to Section 1930 of title 28 of the

United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on

or before the Effective Date.

*13.5 Binding Effect.* This Plan shall be binding upon, and shall inure to the benefit of, the

Debtor, and the holders of all Claims and Equity Interests and their respective successors and

assigns.

*13.6 Governing Law.* Except to the extent that the Bankruptcy Code or other federal law is

applicable or as provided in any document contained in the Plan or in any document which

remains unaltered by this plan, the rights, duties, and obligations of the Debtor and any other

person arising under this Plan shall be governed by, and construed and enforced in accordance

with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law

provisions.

*13.7 Notices.* Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (a) certified mail, return receipt required, postage prepaid; (b) hand delivery; or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtor, to:

Betty Herold
c/o E. Robert Spear
REMMEL & SPEAR, LLP
7456 West Sahara Avenue Suite 101
Las Vegas, Nevada 89117

*13.8 Plan Exhibits.* Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the date of the commencement of the Confirmation Hearing. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    *13.9 Cramdown.* In the event that any impaired Class is determined to have rejected this

2    Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtor will invoke the

3    provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for

4    confirmation of this Plan.

5

6          Dated this _____ day of January, 2010.

7

8

9                                           _____

                                     E. Robert Spear (8672)

10                                        REMMEL & SPEAR, LLP

                                     7456 West Sahara Avenue Suite 101

11                                        Las Vegas, Nevada 89117

12                                        *Attorney for debtor*

13

14         Dated this _____ day of January, 2010.

15

16

17                                        _____

                                     Betty R. Herold

18

19

20

21

22

23

24

25

26

27

28